He will proceed. Good morning, Council, by the way, and welcome to our only Zoom argument this morning that was rescheduled from next week. We moved it ahead. This is case number 22, 2064, United States v. Devargas. Mr. Clark. Good morning, your honors. Mr. Devargas raises three challenges to his conviction for being a felon in possession of a firearm. Two of those challenges, the suppression issues, require the court to apply existing law to the facts of the case. So I'd like to focus my time today on the remaining issue, which presents the question of when and how the civil rights are restored for a felon who receives a sentence, but does not complete that sentence, because he satisfies the court's requirements. All conditions of an order fully suspending the execution of the sentence. Does his situation fall within the requirements of the New Mexico statute? That is, does he have a deferred sentence? He received a suspended sentence, which is based on section 3120-8, but is otherwise in the remaining statutes that we're going to talk about today, referred to it at the same time, both deferred and suspended. Isn't that a problem? The difference between suspended and deferred? I don't think that it's a problem, your honor, because the result is the same for both. And the result under both 3128 and 3129 is that an individual who completes either a period of deferral or a period of suspension is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime. Counsel, isn't the real issue here, it has to do with the consequences of the flow, the post-conviction consequences. For deferment, they're automatic restoration, and for suspended, they're not. Doesn't Reese tell us as much? I don't think that Reese says, your honor, that there is no automatic restoration for suspended sentences. It does, of course, show that it does talk about the distinction between the two from Kenneman. The distinction between a deferred sentence and a suspended sentence, in my view, is not in the restoration of rights. It's in the sentencing jurisdiction of the court. And so the difference is, what may the court do when an order of deferral or an order of suspension is violated? And it doesn't address whether or not the completion of a fully executed, of a fully suspended order of deferral automatically restores the defendant's rights. Well, I'm sorry, Judge Rothman, you were going to follow up. Sorry. Oh, thank you, Judge Moritz. Just one quick follow-up with respect to Reese. Is it your position that this case can be decided under Reese or that an extension of Reese is required? And if it's the latter, you didn't seek certification here. So I was wondering if you could speak to that. Thank you, Judge Moritz. We are asking that Reese be extended to this. We did not seek certification because we believe that the court can make an eerie guess here because the New Mexico Supreme Court has now given us the framework for determining when there is an automatic restoration of rights, which is the four factors that they review in that case. So, of course, the court can certify this issue because it does present an important issue of state law. But I do think that Reese gives the court enough to make an eerie guess in this case. But wouldn't we guess the other way in light of Kenneman and the Attorney General opinions? All of us tell us the difference between deferred and suspended. As far as restoration of rights, the issue with Kenneman and the previous Attorney General opinions is actually highlighted in Reese. And that's that in 1977 and in 1982, when these decisions were made, there was no automatic restoration of rights under New Mexico law. The only method for restoring rights under New Mexico law at the time was to go to the governor to receive a pardon. But since 2001, the New Mexico legislature and the New Mexico Constitution has been moving, has made significant changes to the scheme for restoration of rights. And our position, Your Honor, is that this language that Kenneman references, which is the last sentence of 3128, is not legally, whether it does not seem to be legally effective anymore because of all of the changes in the law that has occurred since 1977 with the automatic restoration of rights. Well, counsel, it seems to me that you're asking us to extend Reese, but my understanding of Reese was that they focused on the statutory language and the part and the problem they had there was that you couldn't, you couldn't seek a pardon if you had a deferred sentence. But you can seek a pardon. And in fact, that's one of the exceptions under the statute here is if the person has not been pardoned, then they're a convicted felon. Here, if you have a suspended sentence, like everyone else who has served and completed their sentence, you can seek a pardon from the governor. So that's one way to reach an exception. But presumably that's why Section 3 is added here. The person has not received a deferred sentence because that was the problem that they identified in, at least the primary problem they identified in Reese. So why, I guess I'm not understanding why there's any statutory impetus here to extend a deferred sentence to a suspended sentence when the statute Section 2 already seems to encompass a suspended sentence. I believe what you're referencing your honor is the actual felon in possession statute. Well, yeah, yeah, right. Well, you're right and I'm talking about the federal statute, but if the person has been pardoned, they have an exception, correct. It's under 10 years, if it's over 10 years, or the person has been pardoned, or they've not received a deferred sentence, or they received a deferred sentence, sorry. Those are the exceptions. And I guess here, do we even need to worry about that? Because under New Mexico law, and that's where I was going, is the person can be pardoned for a suspended sentence, but they can't be pardoned for a deferred sentence. Yeah, sorry, getting my two federal and state laws mixed up there. Yes, your honor. So I think the court only gets to the question of whether any of the three conditions under the state federal state felon in possession restoration applies if the court first determines that there's no automatic restoration of rights for suspended sentences. But why do we, why do we need an automatic restoration of rights here, unlike in Reese where there was a net the need was based on the statute, which required you present a certificate from the governor, which couldn't be done if you had a deferred sentence, so there was a need to extend in that case, extend the automatically. Does that make sense? It does, your honor, and we don't have that need. Well, your honor, Reese addressed 3113-1E, which was the right to hold public office, and that statute equally would not apply to someone who receives a deferred and a suspended sentence under the reasoning for Reese, which is one of the reasons that we believe there is an automatic restoration of rights. Because certainly someone who receives a suspended sentence, the legislature didn't intend for them to be punished more harshly than someone who received a term of incarceration. So the statutory interpretation that occurred in Reese applies equally to suspended sentences as for the right to hold public office. The separate question of if there's not an automatic restoration, was Mr. DeVargas' right to possess a firearm restored? And we believe that it would have been restored first under the pardon section, because the New Mexico Supreme Court has said that completion in Reese, that completion when there's a grant of an act of judicial clemency is the same thing, is effectively a pardon by the governor. Can I just ask you about that? So is it your position in that component of your argument that the judicial clemency aspect is a proxy for actually getting a pardon? It is, your honor, because it doesn't require a pardon from the governor. It requires a pardon by the proper authority. So our position, if the court gets to that portion of the argument, is that Mr. DeVargas did receive a pardon from the proper authority because he completed a fully suspended sentence, which is an act of judicial clemency, and received the discharge from that order. What is the support for your contention that a pardon should be understood as a component of the actual imposition of sentence as opposed to something that is post-conviction? I understand you're talking about the words by the proper authority, and I'm asking you about the word pardon. So it's not the imposition of the actual sentence that results in the pardon. It's the completion. And under Reese, what Reese says is that if when the defendant received a deferred sentence and then completed that deferred sentence and received the dismissal, that that was effectively a pardon because it was the judicial act of clemency. And our position is that's the same for completing a fully suspended sentence. Since 1966, New Mexico courts have said that both suspended sentences and deferred sentences are acts of judicial clemency and have treated them the same for that purpose, to say that a defendant never has a right to a suspended sentence or a deferred sentence. And it's fully at the discretion of the court and that they both serve the same purpose, which is the court identifying that an individual, that there's more of an interest in rehabilitation than there is in punishment. Because of that, we believe that an extension of Reese to suspended sentences says that Mr. DeVorkis is pardoned by the proper authority. What authority should we look at to support that argument? Is there a New Mexico case that's on point? So I would first look at Reese, Your Honor, which does state that the completion of a deferred sentence... But I think we can all read, and it talks about deferred sentences. So it does talk about deferred sentences. And it says that, and it cites to several cases, including Serrano from 1966, to state, and this is in paragraph 29, Your Honor, where it talks about Serrano and how Serrano states that the deferment of a sentence is an act of judicial clemency. Serrano not only states that for deferred sentences, but also states that for suspended sentences. In fact, the Reese court recognizes that throughout their parentheticals, that what Serrano was talking about is both deferred and suspended sentences. And as the opening brief lays out, that has stayed the law of New Mexico since then in 1966. Both are considered an act of judicial clemency. So I think reading them together gets you there. So does it undermine your argument in any way that when Reese was decided, and it was kind of grappling with this distinction between deferred and suspended sentences, it was understanding deferment by way of the background law of suspended sentences. So it was drawing a distinction based on existing law. So can you speak to that? How are we to think about that, that when Reese was grappling with the issue, that the new thing was the deferred and the suspended thing was a given? Sure, Your Honor, and I'll be quick because I do want to reserve some time for rebuttal, if possible. But my reading of the history of suspended sentences and deferred sentences, based on what Reese is doing, the statutory section and the history, is that the difference between the two, and this is identified in Kenneman, is the sentencing jurisdiction and not the restoration of rights. That what a suspended sentence does is it changes the sentencing jurisdiction of a court and it's a more severe form of sentencing compared to a deferral in this scope of judicial clemency. And if I may, Your Honors, I would like to reserve the remainder of my time for rebuttal. That's fine. Thank you, counsel. Ms. Walters? Good morning, Your Honors. May it please the court, Tiffany Walters for the United States. Thank you to the court and counsel for the accommodation and scheduling. If I may, I turn also to the motion to dismiss. This court has could affirm the district court's denial of the motion to dismiss either on the failure to restore the right to hold public office or on the right to restore the failure of the right to restore the right to possess firearms. Counsel, I have a question right off the bat for you about your appointed public office argument. You did not separately appeal the issue as decided in the district court. So, I mean, there's two convictions here, the 1992 and the 2018, right? So we have to grapple with both. You just didn't appeal from the district court's ruling. So how can we reach the issue now? It wasn't raised below, and it would require us to affirm on an alternative ground that would reverse the district court. So could you speak to that, please? As a plea, we can argue for affirmance on any ground supported by the record below. And while the district court found against us below, it ultimately denied the motion to dismiss. So we can argue for affirmance based on alternative reasoning. And in this case, it's a purely legal argument. There's no factual dispute. We briefed it before this court. And so this court has discretion if it so chooses to affirm on that ground. We didn't appeal because we, in fact, had a favorable decision below, although perhaps not on the grounds we would have preferred. So on that basis, this court could reach the issue if it shows. But also, it could affirm on the issue of the firearms that the court has been focused on. May I ask why you say you prefer that it would have been on your newly raised issue, I suppose? I'm struggling to see that. To me, that seems like a much more complex analysis, one that's harder to predict what certainly what the New Mexico Supreme Court would do here. Just interested in your thought process on that. We acknowledge it is a novel issue and it wasn't raised below. And we don't have any case law interpreting it, but it would provide helpful guidance for us. The district court has reached this constitutionality issue, even though it wasn't determinative in this case. And that opens up the issue in other cases. We've already seen it raised in at least one other case. And we're going to be litigating below whether or not New Mexico felonies can be 922 predicates absent of pardon from the governor. So if this court were to reach it, it would provide helpful guidance on an issue that's unsettled. And we don't know when the New Mexico Supreme Court will speak to it. And that's essentially why we've asked the court to reach this issue, acknowledging that it's purely within this court's discretion. Well, if we if we go there, it would seem to me that you've just teed up the perfect reason to certify a question. We do think that the court could reach this question without certification because of the clarity of the New Mexico Constitution, the statutes as to a point of office. We would not make that assertion as to elective office. This court in Reese recognized that it was a in this court's decision. And Reese recognized that it was a close decision with good arguments on both sides and certified it to Reese in that case to the Supreme Court. And Reese, why wouldn't they do the same thing? We certified this question. Why wouldn't they do the same thing they did to us? And Reese, which was basically ignore the constitutionality question and go straight to the language of the statute to address the issue, which is what they did. They said we can solve this by looking to the language of the statute and a person who is deferred has a deferred sentence, can't get a certificate. They can't they can't present the governor with a certificate. They can't get this exception. They can't get a pardon. Why? Why wouldn't they do that same thing here and addressing the difference between a suspended sentence and the current statute? I think it's quite likely that the New Mexico Supreme Court would do that, which is why we're not requesting certification and we didn't request it below because there are dispositive grounds. And I would agree with Mr. Hart that based on Reese, we can discern a path to which how how the New Mexico Supreme Court would answer the question as a suspended sentences. So certification isn't necessary. Our alternative request would be that the court address it on the appointed public office issue, which we do think is clear from the Constitution and statutes and certification would not be necessary on that. But if the court does feel that that's an issue that would require certification, we would request the court affirm based on the issue of the right to possess firearms. So if we do not accept the invitation to proceed with the affirmative alternative grounds position, when we think about the gun right, the restoration of the gun right. Are we understanding is that the government's position that is your understanding that Mr. DeVargas is otherwise qualified? I mean, that was sort of how we positioned the question, the certified question in Reese, that the only we're dealing with the mains rights. So in this case, we've got vote, no dispute, jury, no dispute, right to bear arms at issue. Is it the government's position that in the analysis we would then conclude that he does have his right to hold public office restored? This court were to decide based on the right to possess firearms. Is that the court's question? If we declined the invitation to affirm on an alternative ground on an issue of first impression of New Mexico law, is that the government's position that we would proceed into the analysis of the open question? Understanding that Mr. DeVargas is otherwise qualified. I think the court could proceed to the question of firearms without addressing the public office. I don't think it's necessary because all four means rights must be restored. And so if the right to possess firearms is not restored, this court doesn't need to speak to the open issue of public office. And it is a complicated issue, as the court has acknowledged, and the government would request that the court not reach it if it is not dispositive in this case. And if it instead wishes to affirm on the firearms, the government would request that. If you disagree with you on the firearms, is it your position that we would not have to reach the public office issue because you've presented it as a ground for alternative ground for affirmance? If the court finds that the right to possess firearms is restored, I think the court would have to reach the issue of public office. And we have argued for affirmance, both based on our new argument, as well as based on the argument that the district court incorrectly decided that the Constitution prohibits the New Mexico statutes, which clearly prohibits Mr. DeVargas from holding public office. So this court would have to reach that issue in one form or another, whether it be the entire right to hold public office or whether it be limited to this smaller question of the appointed office. Because the district court's finding as to the constitutionality really dealt with Article 7, Section 2A, which only concerns the elective public office. Because you didn't present that argument below. We did. We did challenge the district court, or we did argue that the statutes were in fact constitutional, but we did not. You presented the issue, but you didn't present the argument that you're raising on appeal. So on appeal, we're raising two arguments. One is based on the appointed public office. That was not raised below. The second argument was we disputed Mr. DeVargas's claim that those statutes are unconstitutional broadly, and we also are raising that on appeal. So if the court disagreed with us on firearms, it would have to address the right to hold public office in one framework or another. If the court doesn't have any questions about the appointed public office, I would like to move to the firearms issue to address some of the arguments Mr. DeVargas has raised. That's okay. Mr. DeVargas is arguing for the first time in appeal that he does not fall within the felon possession framework at 30-7-16. Below, he conceded that issue. That's at the second volume of the record, 156. And the United States believed that that argument was also waived in opening brief at page 21. DeVargas falls squarely within the four corners of that statute. He is not subject to a deferred sentence. He has not received a pardon. And he has less than 10 years have passed since he's completed serving a sentence or a period of probation for the felony conviction. In the reply brief, Mr. DeVargas indicates that he has not had a sentence imposed or served a sentence of probation. But if we look to the judgment, it's clear that that is incorrect. The first volume of the record at page 55, he had a sentence of 18 months imposed, which was then suspended. And then he was ordered to serve 18 months probation, after which the order was discharged. So the United States believes that based on 30-7-16, this court can readily find that his right to possess firearms was not restored. DeVargas attempts to argue that this court should extend the holding for deferred sentences to suspended sentences. But looking at the statute for suspended sentences shows why this argument is misplaced. If we looked at 31-20-8, it requires for restoration of rights, a pardon or certificate from the governor for suspended sentences. That language is not present in the statute for deferred sentences, which allows for dismissal of charges upon completion of the sentence. Are we to understand in the analysis each Maine's right individually, or are you contending that we look at them as a bundle? Each Maine's right has to be restored. I'm not entirely sure if the court could clarify what it means by looking at them as a bundle. I want to make sure I'm looking at the right statute. Are you looking at 31-20-8? 30-20-8, yes, the suspended sentence. The suspended sentence. So this says the defendant may in the discretion of the governor be granted a pardon or certificate restoring such person to full rights of citizenship. So when the government is focusing on the consequence of the completion of deferment as a dismissal of charges and having that sort of be the dispositive distinction, this statute has to coexist with the fact that his right to vote is restored and his jury rights restored. So how do we reconcile all that? My question about whether it's a bundle or not is that this says full rights of citizenship, but yet we do have to disaggregate them when we're thinking through the analysis, right? Correct. If there is a pardon, then it would be restoration of full rights and we wouldn't have to segregate them because they all would be restored. But we don't have a pardon here. So we have to go through each of the Maine's rights individually. And here, the pardon language in that section originally did more work because there were not statutory provisions pre approximately 2000 that automatically restored the right to vote and the right to sit on a jury. And statutes have been amended such that those are now automatically restored. But we would disagree with Mr. DeVargas' argument that that language does no work now. Mr. DeVargas could get a pardon from the governor that would allow him to possess firearms less than 10 years after the completion of a sentence. So that would be an effect that that language could have. And certainly as the public office, which I understand it's a disputed issue. But if you accept our position that the statutes prohibit him from holding public office now, it would do work as to those sections. So that language still is effective. And then also to speak to Mr. DeVargas' argument regarding the proper authority for a pardon, the language in the felon possession statute says proper authority, but 31-20-8 defines who that proper authority is in the context of a suspended sentence. And that specifies that the pardon has to come from the governor. Mr. DeVargas is attempting to use this word of clemency to equate a deferred sentence with a gubernatorial pardon with a suspended sentence. And it doesn't do that work. Now, the New Mexico courts have for sure said that both suspended sentences and deferred sentences are acts of judicial clemency. But in State v. Gardner, which Mr. DeVargas cites, the New Mexico Court of Appeals describes these forms of judicial clemency and recognizes that deferred sentences are a greater form of judicial sentence, of judicial clemency than a suspended sentence. It does more work. They're not all equivalent. So while they may be a form of judicial grace, it doesn't mean that the outcome and the effect of each of these types of sentences is the same. And while Reese equated a deferred sentence as an act of judicial clemency with a gubernatorial pardon, that's in the context of the deferred sentence and you have to read Reese in that context. It wasn't speaking broadly about any time you see the word clemency, we can therefore read in the word pardon. So under the plain language of 30-7-16, Mr. DeVargas' right to hold public office hasn't been restored. And Reese doesn't do the work that he would hope that it would do to get him there. Reading Reese, the court of Reese focuses on the unique factors of a deferred sentence. That is the fact that a sentence is never imposed and the fact that at the conclusion of the terms of the deferment, the charge is dismissed. Neither is true of suspended sentences. Reese's discussion shows that New Mexico has historically understood these to be different things. That New Mexico has historically understood that deferred sentences result in automatic restoration of rights. But the suspended sentences do not. And Reese also did not deal with firearms because we had a deferred sentence. So Reese fell squarely within that exception for 30-7-17 for those with deferred sentences. It doesn't speak to the issue that we have here because it wasn't at play here. Because 13-7-16 makes clear that the defendant's right to possess a firearm was never restored. His rights have not been restored and the government would request that this court affirm the district court's decision. And I will cede my remaining 17 seconds. Thank you, Your Honor. Thank you. Mr. Hart, you had a little bit of a rebuttal. Thank you, Your Honor. I just want to address two quick points. The first is if the court does reach the public office issue, then the New Mexico Supreme Court makes clear that Article 7, Section 2B, which is being relied upon by the government in this case, does not allow the state to create qualifications for holding public office. What it does is allow them to create standards for individuals who are already government employees for what they can and cannot do. And that's referencing the Cain case, which addresses how Article 7, Section 2B works, whereas Article 7, Section 2A is about qualifications for holding public office. I'll also, as a final remark, just note that the government makes much that really focuses on the language of the pardon from the governor. But the governor's executive clemency guidelines during this time period recognize that the governor will not normally consider a case in which an individual has successfully completed a suspended or deferred sentence because that individual has already been restored to full citizenship rights in New Mexico. And while that has been changed since, it doesn't, it doesn't, it does, the language only makes it permissive, may consider, which our view is it recognizes that a pardon is not, if I may just finish my one thought, Your Honor. Certainly. That a pardon is not just about restoration of rights, it also has political purposes and that an individual may seek a pardon for during, while a sentence is occurring, but also for reasons other than restoring their full rights of citizenship. All right. Mr. Morris, can I ask one question? Yeah, go ahead. Thank you. Mr. Hart, what do you say to the government's contention that you waived your argument on the proper authority? So this issue was not actually raised below by the government. So, and in fact, it wasn't in the opening brief because this was not the reason why the district court denied the motion to dismiss. It was denied solely on the automatic restoration argument. So, my position is just that we were responding to an issue raised for the first time in the government's response brief. Any other questions from my colleagues? Thank you. Your arguments have been very helpful and briefs and we appreciate it and case will be submitted and will be adjourned until next call. Thank you. Thank you.